UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20cv134

| | |
|---|---|
| **KIMBERLY HENDRIX NORTON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER |
| v. | ) |
| | ) |
| **ANDREW SAUL,** | ) |
| **Acting Commissioner of Social Security** | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 13, 15). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff brought this action under 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying her application for disability insurance benefits ("DIB") under title II of the Act, 42 U.S.C. §§ 401-433.

On October 22, 2016, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, with an alleged onset date of June 6, 2016. (Tr. 10, 177). This claim was denied initially on February 3, 2017, and upon reconsideration on May 30, 2017. (Tr. 75, 92). Plaintiff filed a written request for a hearing on July 28, 2017. (Tr. 10, 109). She appeared via video, with counsel, before an Administrative Law Judge (ALJ) on January 29,

2019; a vocational expert was also present. (Tr. 10, 31). After considering the claim de novo, the ALJ issued a decision on April 3, 2019, finding Plaintiff not disabled. (Tr. 7–20). On April 3, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 1, 157). The Appeals Council denied the request for review. (Tr. 1–3).

Plaintiff then filed this civil action for judicial review of the Commissioner's final decision. The Commissioner has answered Plaintiff's Complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the

> reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At step one, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 12). At step two, the ALJ found that Plaintiff had severe impairments of spine disorder, obesity, and affective disorder, and non-severe impairments of asthma, post-traumatic stress disorder, and hypertension. (Tr. 12–13). At step three, he found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment; in so doing, he additionally considered relevant Social Security Regulations (SSRs). (Tr. 13–14). The ALJ further found that Plaintiff had the following limitations in the "paragraph B" criteria: moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in maintaining concentration, persistence, or pace; and no limitations in adaptation or self-management. (Id.).

As for Plaintiff's residual functional capacity, the ALJ found that Plaintiff has the residual functional capacity "to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; frequently balance; and occasionally stoop. She should have no exposure to unprotected heights. Work is limited to simple, routine, and repetitive tasks. The [Plaintiff] can perform these tasks for two hour blocks of time with normal rest breaks during an eight hour work day, with only occasional changes in the work setting; and work where there is no production rate or pace work." (Tr. 15, 19). At step four, and with vocational expert testimony, the ALJ found that Plaintiff had past work, which he concluded was past relevant work and she would be unable to perform. At step five, the vocational expert provided sample jobs that an individual with Plaintiff's age

("younger" to "closely approaching advanced age[1]"), education ("high school or more"), vocational history, and residual functional capacity would be able to perform. (Tr. 19–20).

Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

V.    **Discussion**

Plaintiff presents two closely related arguments regarding her symptoms, most notably pain: one, that the ALJ did not appropriately consider these symptoms; and two, that these symptoms were not adequately addressed by the residual functional capacity. For the following reasons, both arguments fail.

A. **The ALJ's Consideration of Plaintiff's Symptoms As Part of the Residual Functional Capacity Determination**

Plaintiff first argues that the ALJ did not consider Plaintiff's symptoms, including pain, when evaluating Plaintiff's evidence and making his residual functional capacity finding. (Pl.'s Brief at 4–11). However, the ALJ's determination included a full iteration of Plaintiff's reported symptoms, including hearing testimony, first-person and third-party statements, and statements to her providers regarding her progress; considered the relationship between Plaintiff's alleged limitations and the whole of her evidence; and incorporated Plaintiff's allegations, to the extent he found them to be supported, into the residual functional capacity. (Tr. 15–19). Overall, the

---

[1] The ALJ's determination only cites to the "grid" rules for "younger" individuals. Plaintiff changed aged categories after the time of her hearing, but prior to the decision being issued; therefore, the "grid" rule for an individual "closely approaching advanced age" also applies. In this instance, both grid rules direct that an individual able to perform a full range of light exertional activities would not be disabled; therefore, any error is harmless. 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 2, Rules 202.21 and 202.14.

ALJ's decision reflects an accurate analysis of Plaintiff's impairments and related symptoms and is supported by substantial evidence.

In undertaking symptom analysis, an ALJ must follow a two-step process. First, the ALJ must determine whether there is an impairment or combination of impairments, established by medically acceptable clinical or laboratory diagnostic techniques, which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b); Social Security Ruling (S.S.R.) 16-3p, 2017 WL 5180304, at **3–4 (S.S.A. 2017) (republishing SSR 16-3p with language clarifying its applicability). Second, the ALJ must then evaluate the intensity and persistence of those symptoms, including the extent to which they limit an individual's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at **4–5. When considering the intensity and persistence of an individual's symptoms, an ALJ must consider all available evidence. 20 C.F.R. § 404.1529(c)(1); SSR 16-3p, 2017 WL 5180304, at **5–8. This includes medical opinions, objective medical evidence, and "other" evidence, with factors for evaluation including earnings history; daily activities; location, duration, and frequency of symptoms; precipitating and aggravating factors; type and effectiveness of medication; treatment other than medication; and other measures taken to relieve symptoms. 20 C.F.R. § 404.1529(c)(3).

The ALJ's decision shows that he followed both steps of this process. At the outset, the ALJ determined that Plaintiff had a severe medically determinable impairment of "spine disorder," supported by the medical evidence, but not severe enough to meet the requirements of any listed impairments. (Tr. 12–13). At the second step, the ALJ considered Plaintiff's allegations regarding her symptoms, most notably pain, by evaluating the available evidence and applying the relevant factors. The ALJ opened his residual functional capacity discussion by

noting that he had considered Plaintiff's symptoms and their consistency with the evidence of record, and continued by considering her allegations. (Tr. 15). This discussion included statements regarding Plaintiff's ability to stand, walk, or drive over prolonged periods, related to Plaintiff's low back impairment. (Id.). The ALJ went on to describe Plaintiff's associated medical evidence, including follow up from primary care and specialists, imaging studies, and surgical intervention. (Tr. 15–17). He additionally considered Plaintiff's earlier statements about her daily activities and a third-party statement, and directly considered how well these statements supported Plaintiff's allegations. (Tr. 17). After considering all available evidence, including that related to Plaintiff's symptoms, the ALJ concluded that, in light of that evidence, Plaintiff was able to perform work at the level provided by the residual functional capacity (Tr. 18).

Specifically, when discussing the specifics of Plaintiff's residual functional capacity, the ALJ noted that he considered symptoms and side effects of treatment, such as pain, drowsiness, and fatigue, as limiting her ability to climb or be exposed to hazards (Tr. 18), revealed in testimony and other statements by Plaintiff. In considering Plaintiff's combination of medically determinable impairments and related symptoms, the ALJ determined that her improved radiculopathic symptoms and imaging, and ongoing ability to complete daily tasks (such as performing chores, walking, and driving) did not suggest greater limitations. (Id.). "A claimant has the burden to prove the extent of his functional limitations; it is not the ALJ's burden to prove a lack of limitations." Hendrickson v. Berryhill, Civ. No. 1:16-cv-367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)).

Further, while the ALJ did not discuss every minute piece of evidence, his determination reflects an accurate representation of the available evidence. Moreover, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Anderson v. Colvin, No. 5:13-cv-55-RLV, 2015 WL 6394397, at *9 (W.D.N.C. Oct. 22, 2015) (quoting Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

Contrary to Plaintiff's assertions, the ALJ's consideration of Plaintiff's improvement after her spine surgery was adequately contextualized within other mild to normal findings, such as Plaintiff's normal gait, near-full to full strength, and negative straight leg raise. (Tr. 16, discussing Tr. 595–96, 601–02). While Plaintiff's records do show some new left-sided symptoms, much like the ALJ, Plaintiff's providers note that her imaging did not indicate why she might be having such symptoms, (Tr. 16, 601–02), and Plaintiff appears to have no further follow up with her treating neurosurgeon. Additionally, later primary care records do not demonstrate any concerning findings and only very generally mention "chronic back pain" and pain management treatment. (Tr. 370–74). Therefore, it was not "cherry-picking" to describe Plaintiff's post-surgical improvement in the context of her generally normal findings, and minimal ongoing treatment for any new abnormal findings or symptoms.

Further, while Plaintiff suggests that her testimony indicates her inability to perform the range of work provided for within the ALJ's residual functional capacity, this is asking for an inappropriate weighing of one form of evidence over others. In Mascio v. Colvin, the Fourth Circuit rejected a proposed "great weight rule," suggesting that an individual's allegations regarding pain, such as testimony, be given great weight. 780 F.3d 632, 640 (4th Cir. 2015). In so doing, the court stated that

> the regulations direct an ALJ to take into account 'all of the available evidence,' not only the claimant's pain allegations. 20 C.F.R. § 416.929(c)(1). In addition,

> this court must affirm an ALJ's determination when supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). And it is possible for substantial evidence to support both a claimant's pain allegations and the ALJ's decision that the claimant's pain does not affect her ability to work to the extent that the claimant alleges.

Id. Here, the ALJ was therefore correct in considering Plaintiff's testimony as one of several sources of evidence regarding her pain. The ALJ's discussion is, in all instances, supported by substantial evidence, and reflects a thorough consideration of Plaintiff's alleged symptoms.

**B. Plaintiff's residual functional capacity and her ability to perform a specified range of work activities on a consistent basis.**

Plaintiff next challenges the ALJ's consideration of Plaintiff's symptoms from another perspective, that of a connection between her pain and limitations in concentration, persistence, or pace. (Pl.'s Brief at 11–15). The ALJ's determination, however, including his residual functional capacity finding, is supported by and directly tied to substantial evidence of record.

In support of her argument, Plaintiff compares her case with Mascio v. Colvin, because the ALJ did not present a hypothetical question specifically referring to Plaintiff's alleged pain to the vocational expert. However, the Fourth Circuit in Mascio took issue with the ALJ's failure to ask a hypothetical question encompassing any mental limitations, despite that individual's moderate limitations in concentration, persistence, or pace. The Fourth Circuit was further concerned by the ALJ's inclusion of a limitation to "simple tasks," with no explanation regarding either the omission or how that limitation encompassed the individual's moderate limitations in concentration, persistence, or pace. 780 F.3d 632, 637–38 (4th Cir. 2015).

Here, Plaintiff does not argue that the ALJ failed to account for Plaintiff's mental impairments or related limitations in her residual functional capacity.[2] Moreover, Mascio does not require remand here because the ALJ properly assessed Plaintiff's residual functional capacity on a function-by-function level, including her ability to maintain concentration, persistence, or pace, as well as the effect of her symptoms. As when considering an individual's symptoms, an individual's residual functional capacity is based "on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. 1996). Similarly, the ALJ "will consider the limiting effects of all [an individual's] impairment(s), even those that are not severe, in determining [their] residual functional capacity." 20 C.F.R. § 404.1545(e). The regulations specifically state, "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone." Id. However, neither the regulations nor the caselaw require the ALJ to specifically separate individual impairments or symptoms within the residual functional capacity, because they are considered as a whole. What is required is what the ALJ here did: "identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (internal italics omitted).

Plaintiff does not challenge this aspect of the ALJ's residual functional capacity determination or discussion, but rather the applicability of Plaintiff's pain to her ability to

---

[2] Plaintiff was found to have moderate limitations in concentration, persistence, or pace, which the ALJ accounted for these within the residual functional capacity with several provisions, including: simple, routine, repetitive tasks; two-hour blocks of work time with normal breaks; only occasional changes in the workplace; and no production rate or pace work. (Tr. 14, 15).

concentrate, persist, or maintain pace.  At Plaintiff's hearing, the ALJ presented multiple hypotheticals to the vocational expert concerning her ability to maintain concentration persistence, or pace, or otherwise remain on-task throughout a workday. In addition to the hypothetical used by the ALJ, the ALJ asked the vocational expert about a hypothetical individual who would "due to severe pain, …be off task 20 percent or more of the workday." (Tr. 58).  The ALJ ultimately decided that, given the other limitations described in the residual functional capacity, Plaintiff would not be off-task an appreciable amount of the workday due to her pain.  The ALJ provided an extensive function-by-function analysis, both generalizing, and tying specific impairments and symptoms to, Plaintiff's residual functional capacity.  (Tr. 18–19).  As part of this analysis, the ALJ noted his consideration of more significant limitations, but concluded that no further limitations were needed.  (Id.).

"[Residual functional capacity] is not the least an individual can do despite his or her limitations or restrictions, but the most."  SSR 96-8p, 1996 WL 374184, at *1, 2, and 4.  The ALJ cited specific findings, including Plaintiff's post-surgical improvement, generally mild findings, stable gait, and retained activities of daily living, for his conclusions.  (Tr. 18–19).  As noted previously, the ALJ included pain as one reason for her iterated non-exertional limitations.  (Tr. 18).  In specifically considering Plaintiff's ability to maintain concentration, persistence, or pace, the ALJ reported Plaintiff's overall normal mental status examinations, some improvement with medications, and ability to engage in simple to more complex tasks despite symptoms, including irritability and crying spells.  (Tr. 18).  He again referred to a consultative examination, which provided the basis for limitations in this area, as well as in understanding, remembering, or applying information.  (Tr. 16–18).

Here, the ALJ provided a "logical bridge" to explain the reasoning behind his conclusions, facilitating this Court's review in accordance with the applicable caselaw. That caselaw requires ALJs to make clear connections between the evidence in the record and the conclusions regarding that evidence, which is what the ALJ here has done. See, e.g., Ladda v. Berryhill, 749 F. App'x 166, 172 (4th Cir. 2018).

While Plaintiff argues that the ALJ should have found Plaintiff off-task due to her symptoms, this argument fails. The ALJ's decision clearly shows his work and his consideration of the whole of Plaintiff's evidence. Overall, substantial evidence supports the ALJ's conclusion that Plaintiff would not be significantly off-task due to her symptoms or impairments and otherwise supports the conclusion that Plaintiff would be able to perform the work detailed by her residual functional capacity.

**VI. Conclusion**

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 13) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 15) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: April 28, 2021

Max O. Cogburn Jr.
United States District Judge